# In the United States Court of Federal Claims

| | |
|---|---|
| TIMOTHY WOODS,<br><br>                *Petitioner,*<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>                *Respondent.* | No. 17-00897<br>(Filed: November 14, 2023)[1] |

*Mark Sadaka*, Law Offices of Sadaka Associates LLC, Englewood, NJ, for Petitioner.

*Mary Holmes*, Civil Division, United States Department of Justice, Washington, DC, for Respondent.

**OPINION AND ORDER**

**LERNER**, *Judge*.

    Petitioner Timothy Woods seeks review of Special Master Daniel Horner's Decision denying compensation for his claim under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. § 300aa *et seq*. Mot. for Review, ECF No. 119 ("Mot. for Review II"). Petitioner alleges he developed optic neuritis because of an influenza vaccine he received on October 11, 2014. Pet., ECF No. 1. The Special Master denied relief, finding that Petitioner failed to sufficiently demonstrate he suffered from optic neuritis. However, the Special Master allowed Petitioner to proceed on a diagnosis other than optic neuritis. Petitioner declined and instead filed this Motion for Review.

    Petitioner contends the Special Master's finding that he did not suffer optic neuritis was arbitrary, capricious, and contrary to law. Because Petitioner has not shown that the Special Master erred or that his factual findings and legal determinations were arbitrary, capricious, or otherwise not in accordance with law, the Decision is affirmed.

    Accordingly, and as further explained below, this Court **DENIES** Petitioner's Motion for Review.

---

[1]     This Opinion was filed under seal on October 30, 2023. Under Vaccine Rule 18(b), the parties had fourteen days to propose redactions. None were proposed. Accordingly, this Court reissues this Opinion in its original form.

1

## I. Background

### A. Factual Background[2]

Petitioner received the influenza ("flu") vaccination on October 11, 2014.  Finding of Fact at 5, ECF No. 101.  Roughly nine months later, Petitioner experienced headaches, eye pain, blurry vision, and decreased color vision.  *Id.*  Petitioner sought care from optometrist Bryan Hoke, O.D., for these symptoms.  *Id.*  Dr. Hoke referred Petitioner to Wolfe Eye Clinic where he saw ophthalmologist LeAnn Larson, M.D.  *Id.*  Dr. Larson recommended a neuro-ophthalmology consult.  *Id.* at 6.  As noted by the Special Master, neither Dr. Hoke nor Dr. Larson diagnosed or recorded any suspicion of optic neuritis.  *Id.*  Optic neuritis is the "inflammation, degeneration, or demyelinization of the optic nerve or optic disc caused by a wide variety of diseases.  Loss of vision is the cardinal symptom."  *Optic neuritis, Mosby's Medical Dictionary* (10th ed. 2017).

Over the next few months, Petitioner saw his primary care physician for complaints unrelated to his vision problems.  *Id.*  During that time, Petitioner smoked about a pack of cigarettes a day and was under stress due to his nursing school responsibilities and his wife's health issues.  *Id.*  Petitioner's primary care physician "noted that [P]etitioner was scheduled for a neuro-ophthalmology consult 'to evaluate for the possibility of an optic neuritis disorder.'"  *Id.* (quoting Medical Records Ex. 2 at 8, ECF No. 6-2).  In early November 2015, just over a year after receiving the vaccination at issue, Petitioner saw neuro-ophthalmologist Matthew Thurtell, M.D.  *Id.* at 6.  Based on the reported history, Dr. Thurtell suspected an attack of optic neuritis that "may have been vaccination-related," but upon examination, could only objectively confirm mild optic neuropathy.[3]  *Id.* at 7.  Dr. Thurtell recommended Petitioner receive a brain MRI for further evaluation, but Petitioner declined to do so.  *Id.*

On January 27, 2016, Petitioner requested that his primary care physician provide an exemption from future flu vaccinations.  *Id.*  The provider granted the request, but believed there were other factors that could have contributed to Petitioner's condition.  *Id.*  Over a year later, on March 30, 2017, an eye examination at Peterson Eye Care revealed that Petitioner's vision was normal.  *Id.*  On December 1, 2017, Petitioner went back to Wolfe Eye Clinic for ongoing intermittent left eye pain.  *Id.*  There, Dr. Larson performed an optical coherence tomography ("OCT") scan, which indicated possible affliction in the left eye, and recommended Petitioner follow up with a neuro-ophthalmologist.  *Id.*  There is no evidence that Petitioner pursued this referral.  *See id.*

---

[2]   To resolve the pending Motion for Review, the Court summarizes the facts as presented in the Special Master's Finding of Fact and Decision.

[3]   Optic neuropathy is "a disease, generally noninflammatory, of the eye, characterized by dysfunction or destruction of the optic nerve tissues.  Causes include an interruption in the blood supply, compression by a tumor or aneurysm, a nutritional deficiency, and toxic effects of a chemical.  The disorder, which can lead to blindness, usually affects only one eye."  *Optic neuropathy*, *Mosby's Medical Dictionary* (10th ed. 2017).

Over two years later, on February 18, 2020, Petitioner returned to Wolfe Eye Clinic and saw Cory Bower, O.D. *Id.* Petitioner underwent another OCT scan, which showed mild nerve fiber thinning in Petitioner's left eye. *Id.* Dr. Bower "noted that this finding is consistent with optic neuritis," but concluded that Petitioner's "condition was 'stable' and '[i]nsignificant' in terms of overall severity." *Id.* (quoting Medical Records, ECF No. 65, Ex. 42 at 5, 6).

### B. Procedural Background

On June 30, 2017, Petitioner filed a Vaccine Act claim with the Office of Special Master alleging that his October 11, 2014 flu vaccination was responsible for his orbital eye pain, decreased vision, vision loss, and optic neuritis. Pet. at 1. In support, Petitioner provided expert opinions by neuroimmunologist Lawrence Steinman and ophthalmologist Todd Lefkowitz. Expert Report, ECF Nos. 18, 28, 54. Respondent submitted competing expert opinions from neuro-ophthalmologist Marc Bouffard and immunologist J. Lindsay Whitton. Expert Report, ECF Nos. 21, 23, 34, 35. The parties' experts disagreed on an optic neuritis diagnosis. Decision at 3, ECF No. 115. Because Petitioner's causation theory depended on an optic neuritis diagnosis, the Special Master found it "reasonable to first resolve on the written record the question of whether there is preponderant evidence that [P]etitioner suffered optic neuritis." Scheduling Order, ECF No. 61. A fact hearing was held on March 30, 2021, followed by additional briefing and record development. Prehearing Order, ECF No. 63.

On July 1, 2022, the parties filed briefs regarding the factual issue of diagnosis. Pet'r's Br., Resp't's Br., ECF Nos. 92, 93. On September 2, 2022, the parties submitted concurrent responsive briefs. Pet'r's Reply, Resp't's Reply, ECF Nos. 95, 97. With its response brief, Respondent included a supplemental expert report from neuro-ophthalmologist Marc Bouffard. Expert Report ("Ex. M"), ECF No. 96. Petitioner moved to strike both Respondent's brief and Dr. Bouffard's report. Pet'r's Mot. to Strike, ECF No. 98.

On December 6, 2022, the Special Master issued his findings. Finding of Fact. After considering the record, including Petitioner's medical history, the expert reports, and applicable law, the Special Master concluded that Petitioner had not established that he suffered from optic neuritis. *Id.* at 19. The Special Master described the factual history as reflected in the medical records, in Petitioner's affidavit, and in his and his wife's testimony. *Id.* at 5–9. The Special Master summarized the expert reports and their competing positions. *Id.* at 10–15. The Special Master noted Dr. Bouffard's conclusion that Petitioner's clinical presentation, description of symptoms, and ophthalmologic examinations did not support an optic neuritis diagnosis. *Id.* at 14. Granting in part Petitioner's Motion to Strike, the Special Master excluded Dr. Bouffard's supplemental expert report from the record. *Id.* at 19.

In giving more weight to Respondent's expert reports, the Special Master concluded that Petitioner "has not preponderantly established that he suffered optic neuritis." *Id.* The Special Master noted that Petitioner specifically pled optic neuritis in his Petition and that Dr. Steinman's causal opinion is based on optic neuritis. *Id.* at 21. Because "the evidence preponderates against a finding that [P]etitioner suffered optic neuritis," the Special Master cautioned that this finding was presumptively dispositive. *Id.* However, the Special Master gave him "an opportunity . . . to file an amended petition and supplemental expert report based on an injury other than optic neuritis." *Id.* at 22. Instead, Petitioner filed a Motion for Review with

3

this court.  Mot. for Review, ECF No. 104.  Petitioner alleged that the Special Master's findings elevated the Petitioner's burden above the preponderance of evidence standard and were arbitrary, capricious, or not otherwise in accordance with the law.  *Id.* at 1.

Respondent moved to dismiss on grounds that the Special Master's Finding of Fact is not a decision under the Vaccine Act and therefore the court did not have jurisdiction to review it.  Mot. to Dismiss at 3–7, ECF No. 107.  Judge Thompson Dietz, who was initially assigned this case, dismissed Petitioner's Motion for Review, explaining that "Special Master Horner has not yet issued a decision under Section 12(d)(3)(A) of the Vaccine Act."  Mem. Op. and Order at 3, ECF No. 112.  Following this dismissal, the Special Master again directed Petitioner to file "a status report confirming he intends to file an amended petition and supplemental expert report based on an injury other than optic neuritis or a written submission pursuant to Vaccine Rule 8(d)."  Scheduling Order, ECF No. 113.

For a second time, Petitioner declined to file an amended petition and stated that he would either file a motion for reconsideration or another motion for review.  Pet'r's Status Report at 1, ECF No. 114.  Petitioner asked the Special Master to issue a decision in accordance with his Finding of Fact.  *Id.*  On July 21, 2023, the Special Master dismissed Petitioner's case, finding that Petitioner did not preponderantly demonstrate he suffered optic neuritis.  Decision at 6.

The Special Master reiterated that Petitioner's claim hinged on an optic neuritis diagnosis, and any "causal assessments contained in [P]etitioner's medical records were likewise premised on the presence of optic neuritis." *Id.* at 5.  However, Petitioner failed to sufficiently demonstrate that he suffered from that condition.  *Id.*  The Special Master explained that Petitioner "was provided an opportunity to determine whether he could demonstrate his symptoms to be vaccine caused without relying on a diagnosis of optic neuritis, but he has indicated that he cannot do so."  *Id.*  Petitioner's subsequent Motion for Reconsideration was denied, with the Special Master cautioning that Petitioner's "motion does not come anywhere close to stating a basis for reconsideration under the [relevant] legal standard despite its heated rhetoric."  Order Den. Recons. at 5, ECF No. 117.  On August 17, 2023, Petitioner filed a second Motion for Review, which is now before this Court.  Mot. for Review II.

## II.     Standard of Review

Under the Vaccine Act, parties may request the United States Court of Federal Claims to review a special master's decision.  42 U.S.C. § 300aa–12(e)(1).  Upon such review, the court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

42 U.S.C. § 300aa-12(e)(2); *accord* Vaccine Rule 27.

The standards in section 12(e)(2)(B) "vary in application as well as degree of deference" as each "standard applies to a different aspect of the judgment." *Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992). "Fact findings are reviewed . . . under the arbitrary and capricious standard; legal questions under the 'not in accordance with law' standard; and discretionary rulings under the abuse of discretion standard." *Id.* "Thus, the [Court of Federal Claims] judge reviews the special master's decision essentially for legal error or factual arbitrariness." *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1574 (Fed. Cir. 1993). The standard of review is "the most deferential possible." *Munn*, 970 F.2d at 870.

When reviewing a special master's factual findings, the Court does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011); *see also Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (stating that the Vaccine Act "makes clear that, on review, the Court of Federal Claims is not to second guess the Special Masters [sic] fact-intensive conclusions"); *Munn v. Sec'y of Health & Hum. Servs.*, 21 Cl. Ct. 345, 348 (1990), *aff'd*, 970 F.2d 863 (Fed. Cir. 1992) ("If the evidence in the record has been considered, and such evidence provides a reasonable basis for the special master's finding, the special master's findings of fact may not be set aside."); *Snyder ex rel. Snyder v. Sec'y of Health & Hum. Servs.*, 88 Fed. Cl. 706, 718 (2009) ("[T]he law is settled that neither the Court of Federal Claims nor the Federal Circuit can substitute its judgment for that of the special master merely because it might have reached a different conclusion.").

"[S]pecial masters have broad discretion to weigh evidence and make factual determinations." *Dougherty v. Sec'y of Health & Hum. Servs.*, 141 Fed. Cl. 223, 229 (2018). The special master "need not discuss every item of evidence in the record" when making a factual finding "so long as the decision makes clear that the special master fully considered a party's position and arguments on point." *Snyder v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 461, 466 (1996), *aff'd*, 117 F.3d 545 (Fed. Cir. 1997); *see, e.g.*, *Hazlehurst v. Sec'y of Health & Hum. Servs.*, 604 F.3d 1343, 1352 (Fed. Cir. 2010) (noting that a reviewing court presumes that the fact finder has considered all the material in the record, whether or not it is mentioned in his or her decision). Furthermore, the "special master's decision often times is based on the credibility of the experts and the relative persuasiveness of their competing theories." *Broekelschen v. Sec'y of Health & Hum. Servs.*, 618 F.3d 1339, 1347 (Fed. Cir. 2010). The Federal Circuit has made clear that the special master's credibility findings "are virtually unchallengeable on appeal." *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1362 (Fed. Cir. 2000).

### III. Discussion

Petitioner asks this Court to set aside the Special Master's findings and determine instead that he suffered optic neuritis by a preponderance of the evidence. Mot. for Review II at 1. Fundamentally, Petitioner wants this Court "to engage in an activity beyond [its] authority as constricted by statute and precedent—namely to reweigh the evidence concerning" if Petitioner suffered from optic neuritis. *Webb v. Sec'y of Health & Hum. Servs.*, No. 2021-2276, 2022 WL 1073216, at *4 (Fed. Cir. Apr. 11, 2022). Alternatively, Petitioner "requests that the Court

remand the case back to the Special Master for further consideration." Mot. for Review II at 1 n.1.

Petitioner argues that the Special Master erred in three ways. First, he claims the Special Master "impermissibly elevated" Petitioner's burden to establish optic neuritis. *Id.* at 1. Second, Petitioner asserts that the Special Master's finding that Petitioner "does not have optic neuritis was not in accordance with the law, and/or was at a minimum, arbitrary and capricious." *Id.* at 2. And finally, Petitioner contends the "lack of fairness in the process deprived Petitioner of a fair and impartial decision on the critical issues in his case and thus was not in accordance with the law." *Id.*

The Court is unpersuaded. Special Master Horner's factual findings are in accordance with the law and are neither arbitrary nor capricious. The record shows the Special Master scrutinized and weighed the competing evidence, relied on the record, and thoroughly explained his reasoning in reaching his conclusions. In accordance with the arbitrary and capricious standard, this Court gives the Special Master's factual findings deference. Additionally, Petitioner fails to demonstrate a lack of fairness in the Special Master's proceedings. For these reasons, this Court upholds the Special Master's Decision and denies Petitioner's request for a remand.

### A. The Special Master's determination that Petitioner did not have optic neuritis was not arbitrary and capricious.

To receive compensation under the National Vaccine Injury Compensation Program, a petitioner must prove by a preponderance of the evidence that a vaccine caused the injury at issue. 42 U.S.C. §§ 300aa–11(c)(1), –13(a)(1). If the claimed injury is *not* listed in the Vaccine Injury Table (i.e., an "off-Table injury"), the petitioner may seek compensation by proving causation in fact. *Moberly v. Sec'y of Health & Hum. Servs.*, 592 F.3d 1315, 1321 (Fed. Cir. 2010); 42 U.S.C. § 300aa–11(c)(1)(C)(ii). Here, Petitioner alleges he suffered an off-Table injury following his flu vaccination on October 11, 2014. He therefore needs to prove "causation in fact" under the "*Althen* test." *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). To succeed, Petitioner must demonstrate by a preponderance of the evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Id.*

However, an off-Table petitioner "must specify his vaccine-related injury." *Broekelschen*, 618 F.3d at 1346. The Federal Circuit explained that the Vaccine Act "places the burden on the petitioner to make a showing of *at least one defined and recognized injury*." *Lombardi v. Sec'y of Health & Hum. Servs.*, 656 F.3d 1343, 1353 (Fed. Cir. 2011) (emphasis added). "Medical recognition of the injury claimed is critical and by definition a 'vaccine-related injury,' i.e., illness, disability, injury or condition, has to be more than just a symptom or manifestation of an unknown injury." *Broekelschen*, 618 F.3d at 1349. Simply, as a threshold matter, Petitioner must establish that he suffered from optic neuritis.

This case is unusual in that Petitioner's injury itself was in dispute. *See, e.g.*, *id.* at 1346. Thus, it was appropriate "for the [S]pecial [M]aster to first determine which injury was best supported by the evidence presented in the record before applying the *Althen* test." *Id.*; *see also*

6

*Wyatt v. Sec'y of Health & Hum. Servs.*, 825 F. App'x 880, 885 (Fed. Cir. 2020) ("Identification of the petitioner's injury is a prerequisite to causation analysis."). "In the absence of a showing of the very existence of any specific injury of which the petitioner complains, the question of causation is not reached." *Lombardi*, 656 F.3d at 1353.

After extensive briefing, multiple expert reports, and a hearing, the Special Master found that Petitioner did not sufficiently demonstrate that he suffered from optic neuritis. *See* Decision at 1–4. Petitioner's complaint that the Special Master "disregarded" certain evidence amounts to a request that this Court reweigh the evidence in the hope that it will come to a different conclusion. Mot. for Review II at 13–17. When reviewing a special master's factual findings, the Court may "set aside any findings of fact or conclusion of law . . . [if] found to be arbitrary [or] capricious," 42 U.S.C. § 300aa-12(e)(2)(B), but it may not "substitute its judgment for that of the special master." *Snyder*, 88 Fed. Cl. at 718. The "arbitrary and capricious" standard is "highly deferential." *Hines on Behalf of Sevier v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991). The standard "is difficult for an appellant to satisfy with respect to any issue, but particularly with respect to an issue that turns on the weighing of evidence by the trier of fact." *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1375 (Fed. Cir. 2016) (internal quotations omitted). If the Special Master has "considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." *Hines*, 940 F.2d at 1528.

Here, the Special Master provided a thorough analysis, explaining the evidence before him and the reasons supporting his conclusions. The Special Master chronicled the factual history as reflected in the medical records, as well as in Petitioner's affidavit and testimony, and discussed its relevance to the case, its weight, and its credibility. Finding of Fact at 5–10.

The Special Master, in interpreting the factual history, explained the reasoning behind his conclusion that "Petitioner has not preponderantly established that he suffered optic neuritis." Finding of Fact at 19. The Special Master noted that Petitioner's physical symptoms are "inconsistent" with those typically associated with optic neuritis, explaining that "objective examinations and testing did not reveal evidence for optic neuritis." *Id.* Indeed, as stressed by the Special Master, "Dr. Larson described [P]etitioner's visual acuity as 'excellent,' and [P]etitioner measured 20/20 in both eyes during Dr. Thurtell's visual examination." *Id.* at 20 (citing Medical Records Ex. 1 at 1-2; Ex. 3 at 11, 14). Accordingly, the Special Master observed that "the evidence preponderates against a finding that [P]etitioner suffered optic neuritis" based on the ophthalmologic examinations. *Id.* Moreover, in evaluating the expert reports, the Special Master explained why he gave more weight to Petitioner's expert and less weight to Dr. Thurtell's "notation as treating physician." *Id.* at 21. This Court is convinced that the Special Master properly considered the evidence before him.

Petitioner repeatedly claims that "all four of [his] treating providers diagnosed him with optic neuritis." Mot. for Review II at 14; *see also id.* at 1 (asserting Petitioner had an "uncontested diagnosis of optic neuritis from multiple treaters"); *id.* at 17 ("uncontested diagnosis from the treating physicians"); *id.* ("the Special Master overruled an undisputed diagnosis of optic neuritis made by 4 treating doctors"). But these assertions simply do not comport with the evidence. Indeed, Petitioner fails to point to any evidence that either Dr. Hoke or Dr. Larson diagnosed him with optic neuritis. Thus, Special Master Horner's finding that Dr.

7

Hoke had not "diagnosed or recorded any suspicion of optic neuritis" is supported by the record. Decision at 2–3 (citing July 6, 2015 Wolfe Eye Clinic Medical Records Ex. 1, ECF No. 6-1; Influenza Immunization Consent Forms Ex. 4, ECF No. 6-4; Affidavit by Timothy Woods Ex. 7, ECF No. 9; July 8, 2015 Wolfe Eye Clinic Medical Records Ex. 44, ECF No. 81-1). In fact, the Special Master notes that Petitioner only "shared his concern" with Dr. Larson "that he may have optic neuritis based on his own internet research." Finding of Fact at 5 (citing Ex. 1 at 1).

Petitioner is "correct that not all of the evidence in the record supports the [S]pecial [M]aster's findings. That, however, is not the question." *Doe v. Sec'y of Health & Hum. Servs.*, 601 F.3d 1349, 1355 (Fed. Cir. 2010). Instead, the Court "determine[s] whether the [S]pecial [M]aster's findings of facts are supported by substantial evidence." *Id.* For the reasons set forth above, the Court finds that Special Master Horner's factual findings are sufficiently supported by substantial evidence.

Petitioner asserts that the Special Master did not properly weigh neuro-ophthalmologist Dr. Thurtell's statement. Mot. for Review II at 13 (citing Ex. A at 3). In it, Dr. Thurtell notes that "[b]ased on the history, [he] suspect[s] [Petitioner] had an attack of optic neuritis." *Id.* But the Special Master convincingly explains why Dr. Thurtell's statement is rebutted by the balance of evidence. First, the Special Master noted that the "quality of Dr. Thurtell's diagnosis suffers given that it was made over one year after the onset of [P]etitioner's symptoms." Finding of Fact at 21. Second, the Special Master explained that Dr. Thurtell based his written statement primarily on the history provided by Petitioner, which "was inconsistent with the history he provided to Dr. Larson several months earlier." *Id.* Finally, the Special Master noted that Dr. Thurtell did not "call for a work-up to rule out other causes for [P]etitioner's symptoms" and that Petitioner declined the MRI recommended by Dr. Thurtell to confirm their cause. *Id.* The Special Master appropriately found that "Dr. Thurtell's diagnostic opinion based on the history provided by [P]etitioner cannot overcome the dearth of objective findings or testing to support the optic neuritis diagnosis." *Id.* The Special Master's conclusions are persuasive.

Petitioner also claims that his experts are either more qualified, or that the Special Master erroneously gave more weight to Respondent's expert reports. *See* Mot. for Review II at 13 (claiming that Petitioner's expert is "arguably more qualified than Dr. Bouffard"); *id.* at 14 (stating that the Special Master "diminish[ed] . . . evidence in favor of" Respondent's experts); *id.* at 15 (arguing "the Special Master gave more weight to Dr. Bouffard's reports than Dr. Lefkowitz"); *id.* ("The Special Master goes on to give Dr. Bouffard's report more weight over [that of] Dr. Thurtell."). But the record suggests the Special Master appropriately weighed the competing expert reports.

The Special Master discussed at length Dr. Bouffard's expert opinion that Petitioner's clinical presentation, description of his symptoms, and ophthalmologic examinations did not support an optic neuritis diagnosis. Finding of Fact at 11–14. He also weighed the expert opinions and noted that Dr. Bouffard's opinion was "entitled to more weight given his specialization in neuro-ophthalmology." Finding of Fact at 20; *see also id.* at 20–21 ("Given Dr. Bouffard's experience and additional qualification in neuro-ophthalmology, his opinion regarding [P]etitioner's clinical presentation and testing is deserving of greater weight than that of Dr. Lefkowitz."). Finally, he thoroughly reviewed Petitioner's expert reports. *See* Finding of

Fact at 5–7 (discussion of Petitioner's exhibits including records from Dr. Hoke, Dr. Larson, Dr. Vernon, and Dr. Thurtell); 10–11 (review of Petitioner's expert evidence).

The Federal Circuit has emphasized that "the special master's decision often times is based on the credibility of the experts and the relative persuasiveness of their competing theories and such credibility findings are virtually unchallengeable on appeal." *Porter*, 663 F.3d at 1251 (internal quotations omitted).  It bears repeating that this Court does "not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses." *Id.* at 1249.  Because the Special Master's factual findings are reasonably drawn from the record, with appropriate weight given to the competing expert reports, this Court will not disturb the Special Master's conclusion.  In addition, there is no reason to remand for further proceedings.  Petitioner was provided several opportunities to proceed on a diagnosis other than optic neuritis, opportunities which he chose not to pursue.  *See, e.g.*, Scheduling Order, ECF No. 102; Scheduling Order, ECF No. 113; Decision at 2.  Furthermore, Petitioner already filed a Motion for Reconsideration which the Special Master denied.  *See* Mot. for Recons.; Order Den. Recons.  Accordingly, remanding for further proceedings would be futile.  *See Koston v. Sec'y of Health & Hum. Servs.*, 23 Cl. Ct. 597, 603 (1991), *aff'd,* 974 F.2d 157 (Fed. Cir. 1992).

### B. Petitioner has not proved a lack of fairness in the proceedings.

Petitioner also argues that Dr. Bouffard's supplemental expert report, Exhibit M, was "highly prejudicial" and that the Special Master's exposure to the report "deprived [Petitioner] of a fair and impartial ruling on the critical issue in his case."  Mot. for Review II at 17–18.  Petitioner's argument fails because he did not make these arguments before the Special Master.  As a result, he is precluded from asserting them here.  *See Weddel v. Sec'y of Health & Hum. Servs.,* 23 F.3d 388, 390 n.2 (Fed. Cir. 1994); *Jay v. Sec'y of Health & Hum. Servs.,* 998 F.2d 979, 983 n.4 (Fed. Cir. 1993).  Under Vaccine Rule 8(f)(1), any argument that is "not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision."  Rules of the U.S. Ct. of Fed. Cl., Vaccine Act Rule 8(f)(1).  Indeed, Petitioner does not claim to have previously argued before the Special Master that Exhibit M was "highly prejudicial" and deprived him of a "fair and impartial ruling."  Mot. for Review II at 17–18.  Consequently, this Court need not consider these arguments.

However, even if Petitioner's arguments were not waived, they fail for the critical reason that Petitioner has not shown any "lack of procedural fairness."  Mot. for Review II at 17.  The Special Master struck Exhibit M after determining that Respondent improperly submitted another expert report.  *See* Finding of Fact at 18 ("[T]he filing of [a medical] article, even if fairly subject to objection, did not reasonably open the door to the filing of an additional report from Dr. Bouffard.  Thus, that aspect of [P]etitioner's motion seeking to strike Dr. Bouffard's supplemental expert report is granted.").  The Special Master did not rely on Exhibit M in his Finding of Fact, and Petitioner fails to identify any evidence of prejudice.  In fact, as a further example of the Special Master's evenhandedness, he denied Respondent's Cross-Motion to Strike the improperly submitted medical article by Petitioner.  Finding of Fact at 18.  Although the Special Master struck the exhibit, he accepted into evidence Petitioner's medical article as "there [was] clearly no prejudice to [R]espondent."  *Id.*

9

Moreover, Petitioner does not cite any authority for the proposition that the Special Master's mere exposure to a stricken expert report is "extremely prejudicial" and requires new fact-finding by this Court. Special masters are not bound by traditional rules of admissibility or the Federal Rules of Evidence. *See Hazlehurst*, 604 F.3d at 1349; *Whitecotton v. Sec'y of Health & Hum. Servs.,* 81 F.3d 1099, 1108 (Fed. Cir. 1996) ("[T]he permissible scope of the special master's inquiry is virtually unlimited. Congress desired the special masters to have very wide discretion with respect to the evidence they would consider and the weight to be assigned that evidence."). The Special Master, acting as a fact-finder, is presumed capable of filtering out improper evidence. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 831 (Fed. Cir. 2010) (a judge acting as a fact-finder "can presumably exclude improper inferences"); *Harris v. Rivera*, 454 U.S. 339, 346 (1981) ("[J]udges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). Given the absence of evidence that Dr. Bouffard's stricken report improperly influenced the Special Master, this Court finds no reason to vacate the Decision or remand.

## IV.     Conclusion

Petitioner did not meet his burden to demonstrate that the Special Master's Decision was arbitrary and not in accordance with the law. The Special Master applied the correct legal standards, and his findings are supported by the record. Accordingly, the Court **DENIES** Petitioner's Motion for Review and **SUSTAINS** the Special Master's Decision. The Clerk of the Court shall enter judgment for Respondent accordingly.

**IT IS SO ORDERED.**

<u>s/ Carolyn N. Lerner</u>
CAROLYN N. LERNER
Judge